1 | Matthew Wade Gilmer,
2 | Matthew Wade Gilmer & Associates
3 | 2110 S20th Street, Suite C
4 | Gulfport, MS 39501
5 | 228-215-0000

6 | IN THE UNITED STATES DISTRICT COURT
7 | FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
8 | AT JACKSON

10 | Case No.

**BARRY GILMER, BY AND
THROUGH HIS NEXT OF KIN
AND DULAY APPOINTED
ATTORNEY IN FACT,
MATTHEW GILMER**

3:25-cv-59-CWR-ASH

*Plaintiffs*

v.

**COMPLAINT**

*Jury trial demanded under
Fed. R. Civ. P. 38(b)*

**RANDALL TUCKER, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS SHERIFF OF MADISON COUNTY,
MISSISSIPPI; PAMELA HANCOCK,
INDIVIDUALLY AND IN HER OFFICIAL
AND CAPACITY AS  PROSECUTOR
FOR MADISON COUNTY, MISSISSIPPI;
DAWN BIGGERT, INDIVIDUALLY AND
IN HER OFFICIAL CAPACITY AS
A DETENTION OFFICER EMPLOYED
BY MADISON COUNTY, MISSISSIPPI;
SCOTT STRAIT, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY AS
LIEUTENANT SHERIFF OF MADISON
COUNTY, MISSISSIPPI;
MADISON COUNTY, MISSISSIPPI;
JOHN DOE SURETY COMPANY;
LLOYD SPIVEY, IN HIS OFFICIAL
CAPACITY AND OFFICIAL CAPACITY;
CAPACITY; JAMES HENDRIX;
JAMES WHITEHEAD;
JACKSON JAMBALAYA;
AND JOHN DOES 1 THROUGH 25**

*Defendants*

45
46
47
48     COMES NOW, Plaintiff, Barry Gilmer ("Barry") and alleges as follows:

49

50                      **<u>Introduction</u>**

51     1.    This cause of action arises from Barry Wade Gilmer's ("Barry") January 24, 2024

52 wrongful arrest, false imprisonment, cruel and unusual punishment, assault, constitutional

53 deprivation of Barry's right to the counsel of an attorney, constitutional deprivation of medical

54 care and unlawful conspiratorial acts committed by the Defendants captioned above.

55     2.    This cause of action is for money damages and injunctive relief brought pursuant to

56 42 U.S.C §1983 to redress the deprivation under the color of state law of Barry's established rights

57 as secured by the Fourth, Sixth, Eight, Fourteenth and Sixteenth Amendments of the United States

58 Constitution against Randal Tucker, Dawn Biggert, Scott Strait and others in their respective

59 capacities as both individuals and duly elected or appointed law enforcement officers of Madison

60 County, Mississippi for their violation of Barry's right to be free from the use of excessive force,

61 cruel and unusual punishment, false arrest, trespass / unlawful search, unlawful seizure,  right to

62 counsel with an attorney and deliberate deprivation of medical care. This cause of action is also

63 brought against Madison County, Mississippi for its unconstitutional policies, customs, and/or

64 practices under *Monell*[1] and its progeny.

65

66

---

[1] *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978)

**Jurisdiction And Venue**

3.    This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331, 1343, and 42 U.S.C. §1983, 1988 as well as violations of the rights guaranteed to Plaintiff, particularly infringement upon Fourth, Sixth, Eight, Fourteenth and Sixteenth Amendments of the United States Constitution. Any other claims are derived from a common nucleus of operative fact such that the relationship between the federal claims alleged herein and any alleged state claim permits the conclusion that the entire action before this Court comprises but one constitutional case pursuant to 28 U.S.C. § 1367 and applicable authorities which interpret the same. All claims against state actors are either federal in nature or exempt by the plain language of the Mississippi Torts Claim Act. Plaintiff alleges jurisdiction over Spivey, Hendrix, Whitehead, and Jackson Jambalaya under the doctrine of supplemental jurisdiction.

4.    Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, acts, omissions, occurrences and events giving rise to this action occurred in the Southern District Of Mississippi. Also, upon information and belief, all of the parties reside in this Judicial District.

**The Parties**

5.    At all times relevant hereto Barry Gilmer was a citizen of the United States and the County Of Madison, State Of Mississippi.

6.    Defendant, Randall Tucker, is the Sheriff of Madison County, Mississippi, and is a bona fide adult resident citizen of Madison County, Mississippi. Defendant Randall Tucker was at all times material acting both individually and as the Sheriff of Madison County, Mississippi. As chief law enforcement officer for Madison County, Mississippi, Defendant Tucker's actions

89  constitute, in part, both the policy and officially condoned action of Madison County, Mississippi,

90  thus rendering Madison County, Mississippi, liable to Plaintiffs in this lawsuit as a political entity.

91      7.     Defendant, Scott Strait, is a Lieutenant Sheriff Of Madison County, Mississippi,

92  and is a bona fide adult resident citizen of Madison County, Mississippi. Defendant Scott Strait

93  was at all times material acting both individually and as the Lieutenant Sheriff of Madison County,

94  Mississippi charged with administration and operation of the Madison County Detention Center.

95  As a law enforcement officer and administrator for Madison County, Mississippi, Defendant

96  Strait's actions constitute, in part, both the policy and officially condoned action of Madison

97  County, Mississippi, thus rendering Madison County, Mississippi, liable to Plaintiffs in this lawsuit

98  as a political entity.

99      8.     Defendant Lloyd Spivey, III, "Spivey" is bona fide citizen of citizen of Canton,

100  Madison County, Mississippi, whose residential address is 361 Peace Street, Canton, Madison

101  County, Mississippi, 39046. At all times material hereto, Spivey was acting as an individual and

102  judge without jurisdiction.

103      9.     Defendant Jackson Jambalaya is a regularly updated website or webpage known as a

104  blog that publishes information about the Jackson, Mississippi Metro Area. Said webpage

105  constitutes a business organized by the laws of the state of Mississippi, and may be served with

106  process by serving its owner and sole publisher, James Hendrix, or James Whitehead, who are each

107  one in the same. Upon information and belief, Whitehead changed his name to avoid public record

108  issues concerning accusations of inappropriate conduct concerning young children.

109      10.    John Doe Surety Company is a corporation unknown to Plaintiffs at this time but is

110  amenable to the process and jurisdiction of this Court by virtue of having qualified to business

111  herein and having provided a performance bond to Defendant Randall Tucker within the State of

112  Mississippi.

**Factual Allegations**

113

114  **A.    History of the Gilmer family, the Justice Court, and the Madison County Sherriff's**

115  **Department**

116  11. From 2000 until present day, Randall "Randall" Tucker ("Tucker") has been employed by the

117      Madison County, Mississippi Sheriff's Department (Sheriff's Department") or the duly

118      elected Sheriff of Madison County, Mississippi.

119  12. Since 1989 until present day, Barry Gilmer or his son Matt have owned land in Madison County,

120      Mississippi. On April 14, 2006, at approximately 4:00 p.m., Matt, a student at Ole Miss at that

121      time, together with five other college students, were shooting skeet on the east end of Barry W.

122      Gilmer's land which is located at 300 Catlett Road in Madison, Mississippi. Matt and the other

123      college students were trained in firearm-safety and experienced in competitive skeet shooting.

124      The line of fire was from a lake's dam towards the west, which was an uninhabited 300-acre

125      area which was owned entirely by Barry at that time. Therefore, there was no physical

126      possibility of injury to persons or property. At that time, the Sheriff's Department unlawfully

127      arrested Barry. Barry was released later that day.

128  13. After Barry was released, he was transported to his property on Catlett Road by an attorney

129      who had posted his bail. Barry rejoined Matt and Matt's college friends who had gathered

130      together because they were concerned about Barry's well being given the unlawful and violent

131      nature of Barry's arrest. After Barry explained the situation, Barry asked his son to tell his

132      friends to leave so Barry could go to bed. As Matt's friends were leaving Matt and Barry's

133  house, at least 5 Sheriff's Deputies entered upon Barry's land and blocked the gated entrance

134  which is located on Catlett Road. The deputies refused to allow any of the college students to

135  leave the property. Three other the patrol cars then entered further onto Barry's property and

136  surrounded Matt and Barry's home in a "SWAT" style action.

137      14.    During the SWAT raid, the Sheriff's Department arrested Matt and Barry and

138  placed them in the back of the same squad car and left the Sheriff's Department radio on. Sheriff's

139  Deputies could be heard discussing that the Sheriff's Department had Matt and Barry in custody,

140  but had to "find something" to make the arrest valid. The Sherriff's Department began searching

141  the entire Gilmer property including multiple houses, heavy machinery, garages, and vehicles. The

142  extensive search extending as much as 100 yards beyond the house and took and place while Matt

143  and Barry were handcuffed in the same patrol car or en route to the jail. The search was conducted

144  not for the purpose of providing for the safety of the excessive police force set upon Matt, Barry

145  and the Gilmer property, but was carried out illegally in the hope that contraband might be

146  discovered and used as a basis for Matt and Barry's  illegal arrest and the illegal search and seizure

147  of the property.  Several witnesses to the event reported that the Deputies were instructed to "find

148  something" at the property. Despite these extensive and illegal efforts, the Sheriff's Deputies found

149  no incriminating evidence whatsoever during their extensive, illegal, and warrantless search of the

150  property.

151      15.    After Matt and Barry were arrested, Barry was once again transported to the

152  Madison County Detention facility and was charged with disorderly conduct, disobeying a law

153  enforcement officer and contributing to the delinquency of a minor. Barry was detained at the

154    Madison County Detention Center until approximately 6:00 a.m. April 15, 2006, when he was

155    released from custody after posting another cash bond.

156         16.    Matt was transported to Oxford, Mississippi, by a Sheriff's Deputy and arrived in

157    Oxford, Mississippi, at approximately 5:00 a.m. on April 15, 2006. The Sheriff's Department

158    claimed the right to arrest Matt flowed from an arrest warrant issued by the City Of Oxford,

159    Mississippi. The Sheriff's Department concealed the warrant from Matt and his attorneys for some

160    time. Eventually a warrant was produced that was issued by the City Of Oxford for a traffic

161    violation, and the warrant was limited to execution within the city limits of Oxford only and only

162    by law enforcement possessing jurisdiction within the confines of the City Of Oxford.

163         17.    Ultimately, all charges against Barry were dropped as a matter of law. The City Of

164    Oxford admitted that the warrant was the result of a computer glitch resulting from power loss due

165    to historical Hurricane Katrina.

166         18.    Following the arrests of April 14, 2006, Barry undertook an investigation of these

167    events. During this investigation, it was uncovered that Sheriff's Department, particularly a deputy

168    and Sheriff Toby Trowbridge, conspired with one another to fabricate baseless charges against

169    Barry before Barry came in the presence of law enforcement. One deputy admitted that he

170    fabricated the charge of resisting arrest and that Barry had done nothing wrong. The facts

171    discovered during this investigation clearly establish that the Sheriff's Department ordered Barry's

172    arrest and selected the charges at a time before law enforcement first encountered Matt or Barry.

173    As a result, the Sheriff's Deputies unlawfully trespassed upon Barry's private property and laid in

174    wait for Matt and Barry to arrive so they could charge one or both of the Gilmers with a crime

175    which did not exist. The Deputies and Sheriff Trowbridge fabricated the charges against Barry,

falsely arrested Barry and Matt, falsely imprisoned Barry, and falsely extradited Matt without the color of law. This happened after Sheriff Trowbridge and deputies conspired with each other to accomplish an unlawful plan with reckless disregard for Matt and Barry's safety and well-being.

19.     Upon further investigation, Barry discovered that some members of the Sheriff's Department habitually and repetitiously engaged in a course of conduct specifically designed and calculated to cause many others to be charged with nonexistent crimes and misdemeanors similar to the events described above, while on the other hand failing and refusing to charge or arrest other individuals who commit offenses in their very presence basing the election to charge and arrest upon social status, economic status, political influence, wealth and privilege, or the lack thereof.

20.     Barry's investigation uncovered a deliberate course of wrongful conduct, pattern and practice carried out by the Madison County Sheriff's Department including but not limited to:

1.  Fabrication of false charges of disorderly conduct, resisting arrest, disobeying a law enforcement officer, disturbing the peace and other misdemeanors when the arresting deputy desires to charge a person but has no legal basis for any charge;

2.  Fabrication of alcohol related charges by falsely asserting breathalyzer refusal when the test in fact shows no violation but the deputy desires to convert the case to a nonexistent DUI refusal charge;

3.  Fabrication of alcohol possession charges by minors or open container laws;

4.  Fabrication of facts and circumstances to attempt justification of savage jail house beatings of inmates or recent arrestees when said persons are completely innocent of engaging in provoking behavior, committing a criminal offense at the time of the beatings or placing law enforcement personnel in danger of harm;

199    5.  Burning of medical records and other papers in an attempt to avoid proof of claims
200        of inmates for willful neglect of inmate medical needs, withholding of prescribed
201        medications, intentional infliction of injuries, beatings and other abuses;

202    6.  Formation and maintenance of a "Goon Squad" for the purpose of carrying out
203        physical beatings with issued equipment such as weighted gloves and other devices;

204    7.  Denying recent arrestees access to cash money removed from the arrestee so as to
205        prevent the arrestee from posting bond and refusing to accept corporate surety bond
206        as bail;

207    8.  Knowingly allowing certain personnel to lie relating to personnel matters while
208        terminating the employment of others for related offenses;

209    9.  Gender and race discrimination in personnel matters relating to maintenance,
210        promotions, and termination of employment.

211  21. At the time of the raid on Barry and Matt's house, Sherriff's deputies could be heard
212     over law enforcement radio accusing Matt of evading current Lieutenant Tommy Strait
213     ("Lt. Strait") who presently runs the Madison County Detention Center ("Jail").
214     Comments were made over the radio that Lt. Strait was aggravated that he was unable
215     to apprehend Matt when Strait he suspected Matt of engaging in lawful sexual activity
216     with Matt's girlfriend while on Matt's property. Matt confirmed this as of 2024 by
217     telephone conversation with Strait and the same was recorded.

218       22.    In 2007, Madison County Sheriff's Deputies premediated a search and
219  seizure of Matt in Jackson, Mississippi. Specifically, George Elliot and approximately five
220  Sherriff's Deputies pulled a vehicle over in which Matt was a guest passenger. The stop
221  occurred  on Briarwood Drive, Jackson, Mississippi. Sheriff's deputies restrained Matt to

222   the rear of a police SUV and brandished a baton. The Sheriff's Deputies then threatened

223   to "beat [Matt's] teeth down his throat" if Matt did not furnish information that would

224   incriminate or otherwise help the Sheriff's Department prevail over Barry regarding the

225   SWAT raid and Barry's investigation of the Jail. Matt declined and Matt was arrested and

226   was charged with minor in possession of alcohol. At least three people witnessed Matt's

227   unlawful interrogation and arrest.

228       23.    The Sherriff's Department insisted that Matt be prosecuted. In the first

229   trial, the Madison County Justice Court found Matt guilty of minor in possession of alcohol

230   despite (a) no alcohol was presented as evidence; and (b) the entire arrest and interrogation

231   occurred in Hinds County, Mississippi. Matt appealed the Justice Court judgment to the

232   Madison County, Mississippi County Court. The charge against Matt was summarily

233   (instantly) dismissed because the presiding judge ruled that the Sheriff's Department had

234   no jurisdiction in Hinds County, Mississippi and there existed no evidence that Matt was

235   in possession of alcohol because the Sheriff's Department did not collect any evidence.

236       24.    In 2011, Tucker announced his candidacy for Madison County, Sheriff and

237   issued the following statement to the media "As Madison County Sheriff, I will continue

238   the high level of law enforcement and justice Madison County residents expect and have

239   enjoyed under Sheriff Toby Trowbridge." Also, Barry was the largest financial donor

240   opposing Tucker, or in other words, Barry made large contributions to Tucker's opponent.

241   Nevertheless, Tucker was elected Sheriff and was sworn into office January 1, 2012.

242    25.    In 2014, Matt became an attorney licensed to practice law in all state and

243    federal courts in the State Of Mississippi. Upon doing so, Matt began taking on legal cases

244    as a sole proprietor in the usual fashion of a young attorney, cases such as misdemeanors

245    and uncomplicated divorces. Matt often appeared before the Madison County Justice Court

246    as an attorney. In 2016, Pamela "Pammi" Hancock was sworn into office as the Madison

247    County Prosecutor, aka the prosecutor for the Madison County Justice Court. Shortly after

248    becoming elected, Pammi called Matt and accused Matt of conspiring with an elected judge

249    and another elected official to lower Pammi's prosecutorial salary. Unbeknown to Matt,

250    Pammi's salary exceeded $100,000 per year and Pammi was allowed to maintain her

251    normal, private law-practice which also generated additional income. Pammi threatened to

252    sue Matt and expressed total disdain for Matt and his father, Barry. Matt pleaded with

253    Pammi that (a) Matt did not know about any plan to lower her salary; and (b) Matt, as a

254    young attorney, would never contact judges and elected officials and attempt to persuade

255    such people to commit unlawful acts as alleged by Pammi. Despite Pammi's unfounded

256    allegations, others did address Pammi's salary to the Madison County Board Of

257    Supervisors, and the Supervisors reduced Pammi's salary. Again, Matt had no knowledge

258    of these events and did not participate in the same.

259    26.    From that point forward, each time Matt had trial in the Madison County

260    Justice Court, Matt and his clients were treated in manner inconsistent as compared to

261    other attorneys and their clients. In simple terms, Pammi made her scorn for Matt and Barry

262    known among the public and the local bar (attorneys). Also, even though Pammi accused

263    Matt of conspiring to defeat her salary, Pammi never recused herself as prosecutor over

264  cases in which Matt or Barry served as the defendant's attorney or when Barry was a named

265  defendant.

266      27.     In 2017, a controversy between Barry and a younger attorney arose resulting

267  from the younger attorney stealing research and office supplies from Barry's office. The

268  young attorney alleged Barry snatched a file from the younger attorney's hand as he was

269  leaving Barry's office for the last time. The controversy evolved into Barry being charged

270  with a misdemeanor in the City Of Madison Municipal Court. All judges recused

271  themselves. Madison County Justice Court Judge Marsha Weems Stacey claimed to be

272  appointed special judge despite the nonexistence of an appointment order. Judge Stacey

273  held a trial where three witnesses testified that Barry was not guilty of any wrongdoing.

274  Nevertheless, Justice Court Judge Marsha Weems Stacey found Barry guilty. Barry

275  appealed Judge Stacey's ruling and was found not guilty during the appeal. The younger

276  attorney is listed as "in active" pursuant to the Mississippi Bar's website. Upon information

277  and belief, the younger lawyer exited the practice of law in fear of the filing of various bar

278  complaints. In sum of the city court issue, Madison County Justice Court Judge Marsha

279  Weems Stacey exhibited biasness and malice toward Barry and the same was obvious when

280  she convicted Barry of a baseless crime with zero supporting evidence.

281      28.     On Easter Weekend 2018, Matt and his personal friend and close trusted

282  financial advisor were vacationing at Matt's lake house on the Ross Barnett Reservoir,

283  Madison County, Mississippi. At approximately 10:00 PM, multiple Sheriff's Deputies

284  entered upon Matt's property in SWAT style fashion and seized Matt and his guest. Matt

285  and the guest were instructed to sit in the driveway until the Sheriff's Department "decided

286    whether or not [they] were going to arrest" Matt and his guest. The guest was instructed to

287    stay outside the house or be arrested. As time passed, other law enforcement agencies

288    intervened, particularly Reservoir Patrol. The Sheriff's Department refused to inform

289    Reservoir Patrol as to why Matt and his guest were unlawfully arrested. Reservoir Patrol

290    contacted its shift commander who instructed the Sheriff's Department that no probable

291    cause existed and the Sheriff's Department was in error. Matt revealed that the entire

292    incident was being recorded, pointed to a surveillance camera, and the Sheriff's

293    Department immediately left with Matt and the guest still under seizure in the driveway.

294    Matt called the Sherriff's Department and was told that he was no longer required to sit in

295    the driveway and someone had made an improper telephone call as opposed to using the

296    Sherriff's radio / dispatch system. No reason was given why the Sherriff's Department was

297    considering Matt's arrest, or what probable cause existed to enter upon Matt's property

298    like a SWAT team – again.

299    29.    After the Easter Weekend incident, Matt made it known to the community

300    that he still considered Madison his home but would be focusing on his Tennessee

301    endeavors because he was tired of the repetitious pattern and practice of gestapo like abuse

302    from the Sherriff's Department and the incompetency displayed by the Madison County

303    Justice Court and Madison County Sheriff's Department.

304    30.    In 2019, the Madison County Justice Court issued a warrant for Matt's

305    arrest claiming that Matt brandished a firearm at his home in Madison County, Mississippi

306    and threatened to kill a man allegedly delivering a package. At the time of the alleged crime,

307    Matt was out of the state.  Nevertheless, Matt was required to post a $1,000 cash bond, and

308   trial was set for May, 2024. At trial, Pammi Hancock engaged in her usual pattern and

309   practice of making Matt and his witnesses wait several hours so she could clear the

310   courtroom before the trial. Pammi routinely does this so the public will not learn of her

311   corrupt and conspiratorial practices as prosecutor and coconspirators, Randall Tucker and

312   the Sheriff's Department.

313   **B. Facts relating to Barry Gilmer and his recent assault.**

314        31.     At the time of the filing of this civil action, Barry Gilmer is seventy-eight

315   years of age, infirm, non-compos mentis, and deemed a vulnerable person pursuant to Miss.

316   Code. §43-47-1 *et seq.* In 2018, Barry was considered a man of good reputation for

317   competency, honesty and good standing before all Mississippi State Courts, all United

318   States District Courts in Mississippi, the Fifth Circuit Court of Appeals in New Orleans

319   and the United States Supreme Court in Washington, D.C.

320        32.     In 2018, Barry was accused of discharging a firearm into a dwelling while

321   lawfully located on an eight-seven-acre tract of land owned by Matt. Barry alleged that a

322   vicious dog was attacking him, and he discharged the firearm into the ground to deter the

323   dog. Barry was prosecuted by Pammi in the Madison County Justice Court, Judge Lloyd

324   Spivey, III, presiding, ("Spivey").  Spivey found Barry guilty and sentenced him to jail.

325   Barry appealed to the County Court Of Madison County, Mississippi. Pammi remained the

326   prosecutor.

327        33.     At the County Court, Barry was convicted in his absence while he was

328   confined to a hospital. Pammi, despite having knowledge of Barry's health issues, insisted

329   that the trial proceed. The dog case was ultimately appealed to the Mississippi Court Of

330   Appeals. During the appellate process, Barry lawfully remained out of custody by posting

331   bail.

332         34.    In December 2020, while the dog case was ongoing, Barry was involved in a

333   motor vehicle accident causing Barry to sustain a fractured skull, traumatic brain injury,

334   total destruction of his rotator cuff (shoulder), multiple fractures to the spine, and multiple

335   broken ribs, including the diagnosis of flail chest.  Barry was required to wear a body-cast

336   for a protracted period of time as well as undergo multiple invasive surgical procedures

337   including but not limited to the installation of orthopedic hardware to reconstruct Barry's

338   shoulder. At all times material hereto, Defendants were on notice of Barry's infirmities

339   because Barry's lawyer provided Sheriff Tucker and other Madison County officials

340   pictures of Barry in the body cast. Additionally, the motor vehicle accident occurred in

341   Madison County, Mississippi and was attended to by the Sheriff's Department and other

342   Madison County support personnel.

343         35.    On January 16, 2024 the Mississippi Court Of Appeals "COA"  rendered its

344   Opinion affirming Barry's criminal conviction from the dog case. At all times material hereto, the

345   COA retained jurisdiction of the case and Barry remained lawfully out of custody and free from the

346   jurisdiction of any lower court, arrest warrant or any other jailtime scenario. Nevertheless, on

347   January 24, 2024 Spivey, acting as an individual and without the color of law, deliberately forged a

348   writ of mittimus ("Bogus Warrant") for the unlawful seizure and arrest of Barry. Upon information

349   and belief, the same was orchestrated with the assistance of Pammi Hancock.  In fact, Barry's

350   lawyer spoke with Pammi about it and Pammi said she was sure "they jumped the gun" because

351    the COA retained jurisdiction of the case. In relation to the above quotation, Pammi was

352    referencing herself and Spivey.

353    36.    Spivey and Pammi unlawfully uttered and distributed the Bogus Warrant among

354    honest peace officers who were ignorant of the void nature of the Bogus Warrant. Upon information

355    and belief, the Bogus Warrant was intentionally and exclusively provided to peace officers who

356    Barry believed to be good and honest elected officials.  As a result, agents of Madison County

357    entered upon Matt's property, made contact with Barry and seized Barry's person and Matt's

358    property proceeding under the false color of law deliberately misrepresented by Spivey, Pammi and

359    the Bogus Warrant.  At said time and place, Barry was non compos mentis, had just underwent

360    diagnostic testing forty-eight hours prior for lapses of reality and fainting spells, and was suffering

361    from a mind-altering urinary tract infection.   Also, Barry did not possess a valid driver's license

362    nor did Barry own a vehicle. Still, Madison County instructed Barry submit to the seizure and drive

363    himself to the Jail.  The same was done by law enforcement escort, or in other words, Barry's body

364    and Matt's property remained under unlawful seizure brought about by the Bogus Warrant.

365    37.    When Barry arrived at the Jail, Sheriff Tucker, Lt. Strait, and other agents of

366    Madison County continued Madison County's seizure of Barry and placed Barry in the custody of

367    Madison County, Sherriff Randall Tucker, Lt. Strait and other John Doe Defendants. Then,

368    Tucker, Strait, and the other agents of Madison County deliberately continued prevailing upon

369    Barry's unsound mind and infirm body, and through deliberate misrepresentation, convinced Barry

370    that Barry must serve a twelve-day jailtime sentence as the ward of Madison County, Randall

371    Tucker, Lt. Strait and other John Doe Defendants.  The public record reflects that Barry's arrest

372    was for incarceration and for no other reason under the color of law. Barry, being a vulnerable adult,

373    a person of advanced age, and non-compos mentis, was cooperative with the Bogus Warrant and

374    the misrepresentations of the above-named Defendants.

375        38.    Upon intake at the Jail, Barry was deliberately deprived of proper medical attention

376    by Madison County, Tucker, and Lt. Strait. The same was brought about by the condition of the

377    Jail, which at all times material hereto, was under the administration, dominion and control of

378    Madison County and Sheriff Tucker.   The acts and omissions accessioned by the condition of the

379    Jail included but was not limited to no physical evaluation of Barry, no mental evaluation of Barry,

380    and no investigation into Barry's necessity of daily healthcare needs, medications, and discovery

381    of other medical information indispensable to humanely incarcerate a vulnerable, infirm person of

382    advanced age such as Barry.

383        39.    From January 24 until January 26, 2024, Barry remained in the custody of and the

384    ward of Madison County, Tucker, Lt. Strait, and other John Doe Defendants. At the same time,

385    said Defendants and other Madison County agents continued in their failure to investigate Barry's

386    health or otherwise attend to Barry's medical needs, including the administration of daily

387    medications and treatment of the ongoing mind-altering infection. Upon information and belief,

388    Barry was suffering from innumerable mind-altering infirmities including but not limited to a mind-

389    altering unitary tract infection, deprivation of mind-altering medications, and ongoing mind-

390    altering complications brought about by Barry's traumatic brain injury, advanced age, and

391    Defendant's deliberate deprivation of medical care.

392

393

394

**B. Barry's Assault**

40.    On January 26, 2024 Tucker, Lt. Strait, Madison County and other John Doe Defendants beat Barry nearly to death. Barry's injuries include but are not limited to:

A.    Diaphragmatic traumatic hernia (blunt force penetrating trauma to the gut with internal bleeding);

B.    Hemothorax (internal bleeding of the chest cavity);

C.    Acute blunt trauma to the kidney with internal bleeding;

E.    Comminuted fracture of the right scapula body and coracoid process (multiple shoulder fractures and inoperable shoulder injuries);

F.    Multiple comminuted rib fractures on the right, with ribs 3-7 broken in 2 places consistent with flail chest (Detached Torso);

G.    T12 Compression Fracture (Serious Broken Back);

E.    Blunt trauma to the chest;

F.    Exacerbation of serious infection;

Below is an excerpt from Barry's medical chart:

**Trauma Surgery History and Physical**

**Name**: Barry Wade Gilmer
**Date of Birth**: 9/10/1946
**MRN**: 1290260
**Location**: UH MM23/23 MM23
**Admission Date**: 1/29/2024

**Trauma Activation**: Bravo Paged @ 2106

**Subjective**

**History of Present Illness**

77 y.o. male brought in by Ground EMS from scene s/p Assault by prison guards . Three days ago, patient was assaulted in prison by guards. Per EMS, patient suffered a UTI, became agitated, and attempted to fight a female prison guard during his incarceration. He sustained blunt trauma to the chest and abdomen. He was

**C. Tucker's representation to the media**

41.    On January 26, 2024, Jackson Jambalaya, by and through its sole owner and journalist, James Hendrix, formerly James Whitehead,  ("Tabloid Defendants") published an article bearing the title "Thug Attorney Assaults Female Jailer". According to Tucker and the Tabloid Defendants, Barry beat a female jailer without provocation, Barry was subdued by a taser, and Barry was returned to his cell. The Tabloid Defendants claimed that Barry was left alone with a female jailer, that Barry's cell door was left open, and that Barry beat the jailer with a breakfast tray. Tucker and the Tabloid Defendants published zero facts regarding the Goon Squad style beating that nearly took Barry's life.  Tucker and the Tabloid Defendant's publication is the first time Barry's attorney and Barry's family learned about Barry's arrest. Nobody knew Barry was not at his home, which he rarely left.

42.    Next, on February 2, 2024, Tucker invites the Tabloid Defendants to the Jail to watch video footage allegedly portraying Barry beating the female jailer. Tucker did so after the case had been submitted to the district attorney. Specifically, Tucker and the Tabloid published the following statements:

1. "Madison County Sheriff Randall Tucker would not release the video as the case is still under investigation but allowed this correspondent to watch the 20-second video and take notes."

2. "The guards managed to pull Gilmer off of the victim and throw him back into his cell."

3. "The incident lasted no more than 20 seconds but probably changed forever what remains of Barry Gilmer's life."

436  4.  "Justice Court Judge Lloyd Spivey held Gilmer's initial appearance only a
437      few hours after attack."

438  5.  "Sheriff Tucker said the case transferred (sic) to the District Attorney so it
439      can be presented to the grand jury."

440  6.  "Gilmer still resides in the Madison County jail, nine days after he entered
441      the facility."

442  **D. Tucker's concealment of Barry and the true facts**

443  43. On January 16, 2024, Barry's conviction was affirmed by the COA in what is known as a judicial

444  decision or opinion. The COA maintained exclusive jurisdiction of the case and did not issue a

445  mandate until June 5, 2024. See *State Of Mississippi v. Barry Gilmer*, MSSCT No. 2022-CT-

446  00257-COA which may be accessed at https://courts.ms.gov/index.php?cn=94783#dispArea

447  44. On June 24, 2024 Spivey issued a mitimus (warrant) for Barry's arrest. At said time, Spivey was

448  acting as an individual citizen because the Madison County Justice Court had zero jurisdiction

449  over Barry's corpus or case.

450  45. On January 24, 2024, Madison County government officials entered upon Matt's property

451  whereat Barry was a lawful tenant. Said government-officials presented Barry with the Bogus

452  Warrant executed by Spivey. The Bogus Warrant alleged that Madison County was vested with

453  authority to arrest Barry and incarcerate Barry for 12 days by jurisdiction of the Madison

454  County Justice Court. Barry was peaceful and compliant. The peace officers asked Barry to

455  drive himself to the Jail under law enforcement escort despite Barry's infirmities, lack of a

456  vehicle, lack of a driver's license, and no corrective vision glasses. At that point, Barry became

457  unlawfully seized, borrowed a vehicle, and drove himself to the Madison County Detention

458  Center.

46. From January 24, 2024 until January 26, 2024, Barry was deliberately deprived of daily medications and proper medical care, including a proper evaluation of Barry's mental health and perception of reality. This was brought about by the condition of the Jail, including policies and procedure violations or the lack of adequate policies and procedures.

47. On January 26, 2024, Madison County, Tucker, Lt. Strait, and other John Doe Defendants allowed Barry to be alone with a female jailer who left Barry's cell door open and furnished Barry a dangerous object. As a result of Barry's diminished mental capacity brough about by the acts of Defendants, an altercation ensued. According to Randall Tucker, the altercation lasted less than twenty seconds and Barry was not harmed in the altercation. To the contrary, Barry was beaten without provocation to the extent that Barry suffered the following which Tucker, Strait, and Madison County did not treat for several days:

1. Diaphragmatic traumatic hernia (blunt force penetrating trauma to the gut with internal bleeding);

2. Hemothorax (internal bleeding of the chest cavity);

3. Acute blunt trauma to the kidney with internal bleeding;

4. Comminuted fracture of the right scapula body and coracoid process (multiple shoulder fractures and inoperable shoulder injuries);

5. Multiple comminuted rib fractures on the right, with ribs 3-7 broken in 2 places consistent with flail chest (Detached Torso);

6. T12 Compression Fracture (Serious Broken Back);

7. Blunt trauma to the chest;

481        8.   Exacerbation of serious infection;

482    48. From January 26, 2024 until January 29, 2024, three attorneys and multiple family members

483    were told that Barry was healthy, in a personal cell, and was not injured. These statements were

484    given by Lt. Strait at the behest of Tucker and Madison County.  At the same time, Barry was

485    denied access to at least two lawyers and all family members who made multiple attempts to

486    visit him.

487    49. On January 29, 2024, Barry was transported to University Mississippi Medical Center

488    ("UMMC") because "[t]hree days ago, [Barry] was assaulted in prison by guards. Per EMS

489    [emergency medical services], [Barry] suffered a UTI [urinary tract infection], became agitated,

490    and attempted to fight a female prison guard during his incarceration. [Barry] sustained blunt

491    trauma to the chest and abdomen."

492    50. On February 2, 2024, the same day Tucker and the Tabloid Defendants published Barry was

493    presently residing in the Jail because the alteration was minor. However, at said time,  Barry

494    was in the Surgical Intensive Care Unit ("SICU") at UMMC. At that time and place, Barry

495    was required to undergo emergency reconstructive surgery that included implementation of

496    metal hardware to re-attach Barry's chest and internal organs to Barry's body. Said surgery was

497    the result of the Goon Squad beating.

498    51. Tucker, Strait, Biggert, and John Does 1-25, deliberately furnished UMMC false information

499    and hid Barry from his family under the alias Travis Bradley while at the same time furnishing

500    statements to the media that Barry was healthy residing in the Madison County Detention

501    Center.

52. Also, Biggert sued Barry, threw the suit papers upon Barry's unconscious body, in urine, and never prosecuted the lawsuit, by and through her attorney, Paul Bridges.

53. At some point, Barry was returned to the Madison County Detention Center. Several weeks later, Barry's family received notice that Barry had lost consciousness in the Madison County Detention Center and was believed to be dead. Matthew Gilmer, Barry's son went to retrieve Barry. However, Barry was not dead. Agents of Tucker and Madison County drug Barry's unconscious body backwards in a wheelchair into the lobby of the detention center. Blood was flowing from Barry's mouth and Barry's body was concealed intentionally by a blanket. When the blanket was removed, Barry was encased in a body cast which concealed open surgical wounds. The video footage of this event may be viewed at madisoncountycorruption.com.

**COUNT I – 42 USC §1983 - Fourth  and Fourteenth Amendment Violations**
*Plaintiff v. Tucker, Strait, Biggert, John Does 1-25, Individually and in Their Official Capacities*

54. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

55. The conduct of the officers, county officials,  and deputies identified in this count and described herein constituted excessive and deadly force and violation of the 14th amendment of the United States Constitution and clearly established law.

56. At all times material hereto, Defendants Tucker, Strait, Biggert, and John Does 1-25 were each acting under the color of state law, as agents of Madison County, Mississippi, and within the scope of their employment and authority as duly-certified law enforcement officers of Madison County, Mississippi.

57. At all times material hereto, Defendants Tucker and Strait were acting in a supervisory capacity as the head of operations of the Madison County Detention Center and directly participated in violating Barry Gilmer's federally protected constitutional rights.

58. At all times material hereto, Defendants Tucker, Strait, Biggert, and John Does 1-25, were on notice that Barry Gilmer was a vulnerable adult by virtue of his age and his infirmities. Said Defendants had no reason to leave Barry Gilmer unattended with dangerous objects or in a state of confinement that would reasonably result in Barry Gilmer being seriously injured.

59. Every reasonable officer/jailer would have known that using such force against a seventy-eight-year-old vulnerable adult constitutes excessive force in violation of the Fourth Amendment.

60. Defendants' use of deadly force in beating Barry Gilmer to the near brink of death was objectively unreasonable and violated clearly established law.

61. It was a violation of Barry Gilmer's Fourth and Fourteenth Amendment rights for Tucker, Strait, Biggert, and John Does 1-25 not to render Barry Gilmer medical aid following Barry Gilmer's savage beating, which demonstrated a serious medical need. Barry Gilmer's first intake record at UMMC is explicit that **Barry's injuries were sustained due to jail assault three days prior, thus evidencing Defendants' intentional and deliberate deprivation of medical care.** Said deprivation exacerbated the injuries above causing Barry to sustain multiple strokes stemming from the head trauma inflicted by Defendants upon Barry. Barry's stroke-incidents were and are totally debilitating which are the direct and proximate result of the acts and omissions pleaded herein.

62. As a result of Tucker, Strait, Biggert, and John Does 1-25's unjustified, excessive, illegal and deadly force, Barry Gilmer nearly died and remains bedridden in a long-term care facility with

545      zero understanding of reality. In simple terms, Defendants beat Barry into a vegetative state in

546      the same fashion Barry investigated years ago, also known as the "Goon Squad".

63.   In addition to these uses of unjustified, excessive, illegal and deadly uses of force, each of the
Defendants had a duty to intervene on behalf of a vulnerable adult whose constitutional rights
were being violated in their presence by another officer. Tucker, Strait, Biggert and John Does
1-25 observed and were in a position to intervene, either physically or remotely, and stop both
Barry Gilmer's beating and Barry Gilmer's post-beating deprivation of medical care. Instead,
said Defendants persisted and perpetuated Barry's cruel and unusual punishment by allowing
Barry to suffer three days without medical care.

64.   It is undisputed that Barry Gilmer peacefully and cooperatively submitted himself to the
custody of Tucker, Strait, Biggert, and John Does 1-25, and therefore, Defendants unjustifiably
created the scenario that led to Barry Gilmer's savage beating and deprivation of medical care.
But for the acts and omissions of said Defendants, Tucker, Strait, Biggert, and John Does 1-25,
Defendants never had a reasonable fear of imminent bodily harm, nor would they have a
reasonable belief that any other person was in danger of imminent bodily harm from Barry
Gilmer. According to Tucker and the Tabloid Defendants, "[t]he guards managed to pull
[Barry] Gilmer off of the victim and throw him back into his cell…[t]he incident lasted no more
than 20 seconds…".

65.   The injuries sustained by Barry Gilmer in twenty seconds are the direct result of a savage,
unjustified use of excessive force that was exerted upon Barry Gilmer so fast and so violent that
Barry sustained the injuries pleaded herein.  Tucker admits through media statements that the
altercation lasted less than twenty seconds' time. Therefore, Barry Gilmer was not furnished

567    sufficient time to comply with officer's commands, or said Defendants had less than twenty

568    seconds to justify the use of deadly force upon Barry.

569    66. Madison County and its Sheriff's Department have long been known to premeditate "Goon

570    Squad" beatings. In fact, it's a policy of the Madison County Detention Center. This heinous

571    and unconstitutional policy was premeditated by Tucker, Strait, and Madison County.

**USE OF FORCE:** All Detention Center staff members have authority to take immediate necessary action to prevent acts of violence, destruction, escape attempts, or to restore order. Such action includes the use of OC (Pepper) spray and/or physical force for personal protection, protection of other persons, and to maintain order. If you decide to physically assault or harm an officer, your efforts will be met with physical force and your efforts will be futile. Any inmate who assaults an officer or staff member will be prosecuted for assault on a law enforcement officer.

This policy in no way restricts the authority of the Sheriff or Jail Administrator to remove or restrict privileges or lockdown inmates to ensure the security of the facility.

572

573    According Tucker's and Madison County's policy above, there is no consideration of a

574    detainee's special needs, age, infirmities, or any other mitigating circumstance which might

575    lead to an unintentional physical altercation. There is also no consideration for the escalation

576    of force from verbal command to deadly force, a clearly established doctrine of law. Instead,

577    Tucker and others predetermined that, should a detainee, vulnerable or otherwise, "decide to

578    physically assault or harm an officer, [that detainee] will be met with physical force and [the

579    detainee's efforts] will be futile." The policy then guarantees the malicious prosecution of the

580    detainee with zero provision that provides for review of the circumstances or special needs of

581    the detainee. In other words, Tucker and Madison County affirmatively and premeditated an

582    unconstitutional policy to immediately result to deadly force no matter the circumstances,

583    physical condition, or mental condition of the detainee.

584    67. At the time Barry was beaten, Barry was suffering from mind altering infirmities and

585    deprivation of daily prescription medicines. In violation of Barry Gilmer's Fourth and

586 Fourteenth Amendment rights, Defendants immediately began savagely injuring Barry Gilmer

587 using unnecessary, gratuitous, and disproportionate force arising from a baton, taser, hand-to-

588 hand combat, or other blunt force instruments. It is factually impossible for a Defendants,

589 Tucker, Strait, Biggert, and John Does 1-25 to have evaluated such an altercation and escalate

590 the proper use of force in under twenty seconds. The policy above corroborates a premeditated

591 decision to infringe upon Barry's federally protected constitutional rights and the constitutional

592 rights of others detained within the Madison County Mississippi Detention Center.

68. As a direct and proximate result of the acts and omissions described herein, Barry Gilmer sustained compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

69. Punitive damages are available against Defendants, Tucker, Strait, Biggert, and John Does 1-25 and are hereby claimed as matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1981) and as such, are not subject to the pleading requirements or the differing standard of proof set forth codified by Mississippi statutes.

70. Plaintiff is entitled to recovery of costs, including reasonable attorney's fees, under 42 U.S.C. 1988.

**COUNT II – 42 USC §1983 –** *Monell Liability and*
*Violation  Of The Federal Patient Self Determination Act*

*Plaintiff v. Madison County, Mississippi, Tucker, and Strait*

71. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

72. The altercation giving rise to this Complaint allegedly occurred in the medical-wing of the Madison County Detention Center.

73. Madison County, Mississippi entered into a "Service Agreement…to provide Health Care Services to the inmates at the Madison County Detention Center" with VitalCore Health Strategies ("VitalCore") paid by Madison County using Madison County Tax-Payer dollars at a base compensation rate of "$1,313,180.00" for the years 2023 through late 2024 (the period during which Barry's rights were violated). The Agreement was considered and ratified on September 18, 2023 by Madison County through unanimous vote of the Board Of Supervisors. Upon information, belief, and pursuant to public records, Madison County has engaged in a habitual pattern and practice of failing to oversee or otherwise monitor the activities of VitalCore. Madison County was and is deliberately indifferent to the need of proper training or oversight of detainee's medical care as provided by VitalCore. Madison County, through VitalCore, committed acts and omissions at the Madison County Detention Center which was, in part or in whole, the proximate cause of Barry's savage beating and deprivation of medical care. Public records reflect that Madison County relies exclusively upon the representations of Tucker, and therefore, has consistently and deliberately failed to supervise or otherwise independently audit VitalCore's policies, procedures, acts, and omissions, and has done so since 2020. Madison County engaged in the same deliberate indifference with regard to Tucker and his representations to the Board Of Supervisors, aka Madison County – a governmental entity as defined by 42 U.S.C. 1983.

74. Madison County, through its policy makers, had knowledge of VitalCore's deliberate indifference for detainee's healthcare and failure to properly administer healthcare, aka deprive detainees of medical care, such as Barry Gilmer.

75. It is clearly established by federal law that when a governmental entity enacts or otherwise charges a private entity with a task, that private entity is acting under the color of law, and therefore, the governmental entity stands in the stead of the private entity. Pursuant to 42 U.S.C. §1983, and its interpretation by the federal judiciary, Madison County is responsible for the acts and omissions of VitalCore, Tucker, Strait, and others placed in charge of Barry's healthcare. Barry Gilmer incorporates the facts and matters set forth throughout this Complaint and alleges that his constitutional rights were violated by Madison County and its failure to monitor the healthcare system Madison County implemented at the Madison County Detention Center  by vote and ratification of charging VitalCore with the duty of intaking, evaluating, and monitoring the health are of detainees housed within the Madison County Detention Center. Also, Tucker consented to this arrangement as he presented it to the Madison County Board Of Supervisors and signed the Agreement as a consenting party.

76. Madison County, through VitalCore, failed to properly evaluate Barry's health upon intake, failed to diagnose or otherwise discover that Barry was suffering from a mind-altering UTI, failed to administer daily medications to Barry, failed to implement policies and procedures ensuring that Madison County's Detention Center Medical Unit/Wing was properly staffed, monitored, or otherwise operating at a standard then and there consistent with standards acceptable in the medical community, and failed to care, or otherwise maintain proper custody over Barry, a vulnerable, mentally and physically infirm adult. Additionally, Madison County,

653   by and through VitalCore, failed to render medical care to Barry or otherwise caused Barry to

654   be deprived of medical care for three days after Barry was savagely beaten by Biggert, Strait,

655   Tucker, and Tucker's "Goon Squad" that Tucker pledged to carry forward during his endorsed

656   campaign as the predecessor of for Sheriff Toby Trowbridge. Tucker campaigned under

657   Trowbridge's endorsement and vowed "I will continue the high level of law enforcement and

658   justice Madison County residents expect and have enjoyed under Sheriff Toby Trowbridge."

659   77. When Barry's unconscious body was drug out of and released into the Madison County

660   Detention Center lobby, agents of Strait and agents of Madison County refused to inform

661   private medical personnel of Barry's condition and injuries. But for Barry's family and the

662   ambulance service standing by, the acts and omissions of Madison County would have rendered

663   Barry dead.

664   78. Madison County, by and through VitalCore, Tucker, and Strait, concealed Barry from his

665   family and medical physicians for weeks despite Tucker being served with Barry's advanced

666   health care directive and durable power of attorney appointing his son, Matthew Gilmer, as

667   agent over Barry's body and affairs. At all times material hereto, Tucker and Madison County

668   were listed as the healthcare decision-makers with UMMC. Tucker, Strait, and Madison

669   County, with absolute deliberate indifference to the healthcare needs of Barry Gilmer, ignored

670   said documents, made autonomous and exclusive healthcare decisions which directly affected

671   Barry's life and body, and refused to furnish Matthew or Barry's family information regarding

672   said decisions and Barry's health.

673   79. Barry suffers from a rare blood disorder, has a personal and religious aversion to blood

674   transfusions, and furnished Matthew standing instructions that he did not wish to be placed on

life support in the event of a life-threatening event. Madison County, through VitalCore, Tucker, and Strait, directed Barry's healthcare with deliberate indifference to Barry's religious beliefs and *intuitu mortis* instructions and desires.  The acts and omissions of Tucker, Strait, and  Madison County, in concert with and through its agent VitalCore, constitute a direct and heinous infringement of Barry's Fourteenth Amendment right to due process which guarantees Barry protection against government interference in deeply personal decisions, including his right to make healthcare and end-of-life choices.

80. Barry's rights were unlawfully infringed upon by Madison County and its agents (Tucker, Strait, and not limited to VitalCore) as Barry's ability to make autonomous healthcare and end-of-life decisions—rights firmly rooted in constitutional protections and statutory mandates— was unjustly curtailed. The constitutional principles of privacy, due process, and equal protection, as recognized by the U.S. Supreme Court, safeguard an individual's authority to make deeply personal decisions, including those pertaining to medical treatment and the refusal thereof. Further, statutory measures such as the Patient Self-Determination Act and applicable federal law,  explicitly empower an individual to establish advance directives, refuse life-sustaining treatment, and, in jurisdictions where permissible, access physician-assisted death. By obstructing Barry's exercise of these rights, the offending actions constituted a direct violation of Barry's legally and constitutionally protected autonomy in matters fundamental to his personhood and dignity.

81. As a direct and proximate result of the acts and omissions described herein, Barry Gilmer sustained compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

82. Punitive damages are available against Defendants Madison County, Mississippi, Tucker, and Strait, and are hereby claimed as matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1981) and as such, are not subject to the pleading requirements or the differing standard of proof set forth codified by Mississippi statutes.

83. Plaintiff is entitled to recovery of costs, including reasonable attorney's fees, under 42 U.S.C. 1988.

### COUNT III – 42 USC §1983 – *Canton Liability*
*Plaintiff v. Madison County, Mississippi, Tucker, and Strait*

84. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

85. Defendant Madison County, Mississippi, including its governing officials, policymakers, and employees, acting under color of state law, failed to adequately train, supervise, or discipline it's the staff in its employee at the Madison County Mississippi Detention Center and failed to properly monitor or enforce its contractual obligations with VitalCore Health Strategies, LLC, with deliberate indifference to the constitutional rights of individuals in its custody, most particularly – Barry Gilmer.

86. Specifically, Madison County, Tucker, and Strait, in their capacities as policymakers and administrators, failed to ensure that deputies/jailers were trained and supervised to prevent the use of excessive force, including the use of physical violence against detainees, such as Plaintiff Barry. This failure directly resulted in deputies beating Barry nearly to death.

87. Madison County, Tucker, and Strait also failed to modify or enforce its contractual arrangement with VitalCore, the entity responsible for providing medical care to detainees, despite knowledge that VitalCore's were and are deliberately indifferent to the medical needs of individuals in custody of Tucker, Strait, Madison County, Mississippi and its Detention Center.

720    88. As a direct result of the acts and omissions alleged herein, Barry was deliberately deprived of

721    necessary and timely medical care, compounding the harm caused by the excessive force and

722    causing additional pain, suffering, and lasting injury.

723    89. Denying Barry life-saving medical care for three days constitutes cruel and unusual punishment

724    in violation of the Eighth Amendment. The deliberate indifference to Barry's serious medical

725    needs, particularly following a life-threatening Goon Squad incident, reflects a complete

726    disregard for basic human dignity and the minimal civilized standards of decency mandated the

727    Federal Constitution. By knowingly withholding necessary medical treatment despite clear and

728    urgent signs of his deteriorating condition and please by Barry's next-of-kin, those responsible

729    subjected Barry to unnecessary pain, suffering, and an increased risk of death. This egregious

730    failure to provide timely medical intervention, especially while Barry was in custody and wholly

731    dependent on Madison County and Tucker for his care, directly violates the protections

732    afforded by the Eighth Amendment against inhumane treatment.

733    90. The actions and inactions of Madison County, Tucker, and Strait demonstrate a pattern of

734    deliberate indifference to the rights of detainees, amounting to a policy or custom under Monell

735    v. Department of Social Services of New York and its progeny.

736    91. The deliberate indifference by Madison County, Tucker, and Strait was a moving force behind

737    the constitutional violations suffered by Barry, including but not limited to his rights under the

738    Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

739    92. As a direct and proximate result of Madison County's failure to train, supervise, and enforce

740    appropriate contractual practices with VitalCore, Barry suffered severe physical and emotional

741    harm, pain and suffering, and incurred medical expenses, for which Madison County is liable.

**COUNT IV – Violation of the Fourteenth Amendment – Stigma Plus**
**Under 42 U.S.C. 1983 and *Paul v. Davis***
*Plaintiff, v. Tucker, Strait, Biggert, Whitehead, Hendrix, Jackson Jambalaya*
*and John Does 1-25*
*Plaintiff v. Madison County, Mississippi, Tucker, Strait and Pamela "Pammi" Hancock*

93. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

94. Barry brings this claim against Defendants Tucker, Strait, and Pammi Hancock for actions that deprived him of liberty interests protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

95. Tucker, Strait and Pammi maintain a close and conspiratorial relationship with Jackson Jambalaya and its owner, Whitehead-Hendrix. The footage of Barry's assault was only released to said Tabloid Defendants.

96. At the time of Barry's savage assault, Barry was an upstanding lawyer, widely respected in his community and bound by the ethical and professional oath of his profession. Throughout his career, Barry has demonstrated unwavering commitment to the rule of law, justice, and the ethical obligations imposed by his legal practice. His professional reputation and standing in the legal community have been impeccable, making Defendants' actions particularly egregious and injurious.

97. Barry alleges that Defendants, acting under color of state law, disseminated false and defamatory statements that impugned his reputation. Specifically, Defendants provided the false information exclusively to a known tabloid journalist, Jackson Jambalaya, who is notorious for publishing sensational and defamatory stories. Jackson Jambalaya operates a publication owned by James Whitehead, an individual who has changed his name to avoid public exposure of his predilection toward engaging in inappropriate conduct involving minor children.

766  Whitehead, using his publication as a tool, has built a reputation for spreading unverified and
767  damaging stories.

768  98. Defendant Pammi Hancock, in particular, has a financial relationship with Whitehead-Hendrix
769  and his enterprise, Jackson Jambalaya. Hancock regularly pays the enterprise money for
770  advertising displayed on the Jackson Jambalaya platform. This relationship underscores the
771  corrupt and unethical nature of the dissemination, as it was made through a publication widely
772  known for prioritizing sensationalism over truth and journalistic integrity as furnished to
773  Hancock in a manner which extends beyond her immunity as county prosecutor.

774  99. Defendants falsely labeled Barry as violent criminal and provided this defamatory information
775  to Jackson Jambalaya, knowing it would be published widely to the detriment of Barry's
776  reputation. These statements, once publicized, caused irreparable harm to Barry's professional
777  reputation, both in his community and within the legal field. As a lawyer, Barry's career relies
778  on the trust and respect of his peers, clients, and the judiciary—qualities that were undermined
779  by Defendants' reckless actions.

780  100.  The false information was not accompanied by any procedural protections to allow Barry to
781  contest or refute the allegations because Barry was non-compos-mentis as a result of the savage
782  Goon-Squad beating. As a direct result, Barry's professional integrity and livelihood as a
783  practicing lawyer were severely harmed. The reputational damage was exacerbated by the
784  known dishonesty and sensationalism of Jackson Jambalaya and the corrupt financial ties
785  between Whitehead, Hancock and Tucker.

786  101.  In addition to reputational harm (the "stigma"), Defendants' actions resulted in a tangible
787  alteration of Barry's legal status or the deprivation of a tangible interest (the "plus"). This

788  included the loss of current and prospective clients, damage to his ability to practice law

789  effectively, denial of professional opportunities, and harm to his standing within the legal

790  community. Furthermore, as a direct result of the defamatory statements and their widespread

791  dissemination, Barry was denied admission to over 50 long-term care treatment facilities

792  required as a result of the acts incorporated herein.  Each facility, upon reviewing the false and

793  defamatory information disseminated by Defendants, declined to provide Barry the necessary

794  care, causing significant harm to Barry's health and well-being.

795  102.    The combined stigma and tangible harm inflicted by Defendants constitute a deprivation of

796  Barry's liberty interest without the procedural protections guaranteed under the Due Process

797  Clause. Defendants acted under color of state law when they made and disseminated false and

798  defamatory statements about Barry. Their conduct deprived Barry of his liberty interests,

799  including his reputation and ability to pursue employment or other tangible opportunities,

800  without providing adequate due process protections. The harm caused to Barry by the

801  Defendants' actions satisfies the "stigma-plus" standard under Paul v. Davis, as it involved

802  both reputational harm and a deprivation of tangible or legal rights.

803  Barry prays for judgment against Defendants as follows: a declaration that Defendants' actions

804  violated Barry's constitutional rights under the Fourteenth Amendment; compensatory

805  damages for reputational, professional, and economic harm caused by Defendants' actions;

806  punitive damages to deter future misconduct; attorneys' fees and costs pursuant to 42 U.S.C.

807  § 1988; and any other relief the Court deems just and proper.

808  ### COUNT V – Libel, Slander, Defamation

809  *Plaintiff v. Jackson Jambalaya, Whitehead and Hendrix*

810  103.    Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

811    104.    Barry brings this claim against James Whitehead, Hendrix, and Jackson Jambalaya for libel,

812    defamation, and slander under Mississippi law. Defendants published and disseminated false

813    and defamatory statements about Barry, including accusations of extreme violence that would

814    change Barry's life "forever". The same was carried out through Jackson Jambalaya, a tabloid

815    publication owned by Hendrix-Whitehead and widely known for publishing sensational and

816    unverified content. These statements, made with actual malice and reckless disregard for the

817    truth, targeted Barry's reputation as a firm but upstanding lawyer and caused significant harm

818    to his professional and personal life. Defendants knowingly or recklessly ignored the falsity of

819    their claims, failing to conduct any reasonable investigation. As a result, Barry has suffered

820    irreparable harm, including damage to his reputation, loss of clients, denial of long-term care

821    treatment by over 50 facilities, and severe emotional distress. Barry seeks compensatory and

822    punitive damages for the harm caused, an injunction to prevent further defamatory actions,

823    attorneys' fees, and any other relief deemed appropriate by the Court.

824

825

826    ### COUNT VI – 42 U.S.C. 1983

827    *Plaintiff v. Pamela Hancock and Lloyd Spivey*

828    105.    Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

829    106.    Plaintiff alleges that Defendant Lloyd Spivey acted without jurisdiction in issuing a warrant

830    for Plaintiff Barry's arrest, as the Mississippi appellate courts had exclusive jurisdiction over

831    Barry's case at the time. This unlawful action was confederated and facilitated by Defendant

832    Pamela Hancock, the Madison County Prosecutor, who admitted to "jumping the gun" in

833    pursuing the warrant.

834    107.    The false warrant triggered a series of events that caused catastrophic harm to Plaintiff,

835    including severe physical and emotional injuries that has left him bedridden and non-compos

836    mentis for life. Defendants' actions were undertaken with reckless disregard for Plaintiff's

837    rights and without proper jurisdictional authority, amounting to abuse of process and

838    infringement upon Barry's federally protected right to due process, freedom from unlawful

839    search and seizure, freedom from excessive bail, and access to medical care.

840    108.    As a result of Defendants' actions, Plaintiff has suffered permanent and irreparable harm,

841    and he seeks compensatory and punitive damages, as well as any other relief the Court deems

842    just and proper.

843    **COUNT VII – Surety Liability**

844    *Plaintiff v. John Doe Surety Company*

845    109.    Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

846    Plaintiff alleges that John Does 1-25 are individuals or entities currently unknown to Plaintiff

847    who committed the acts and omissions alleged above, either individually or in concert with

848    other named Defendants. These unknown defendants participated in, contributed to, or

849    otherwise facilitated the wrongful conduct described herein. Plaintiff reserves the right to

850    substitute the true names and capacities of John Does 1-25 with their proper identities once

851    such information becomes known through discovery or other means. Plaintiff intends to amend

852    this Complaint accordingly to ensure that all responsible parties are properly named and held

853    accountable for their actions.

854

855    **COUNT VII – Surety Liability**

856    *Plaintiff v. John Doe Surety Company*

857    110.    Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

858    111.Under Mississippi law, the unlawful actions of a sheriff are compensated, in part, through the

859    bond required by statute to ensure the faithful performance of the sheriff's duties. This bond

serves as a financial safeguard for individuals harmed by the sheriff's misconduct or failure to comply with the law. In this case, John Doe Surety Company is unknown to Plaintiff, as the surety on the sheriff's bond, and said Party is being sued for the same alleged wrongful acts committed by the sheriff. The lawsuit asserts that the surety is jointly liable for damages arising from the sheriff's actions, consistent with Mississippi's legal framework for holding both public officials and their sureties accountable for breaches of public duty.

**Payer For Relief**

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

a.  An award of general and special damages in an amount to be determined at trial, sufficient to compensate Plaintiff for the injuries and harm suffered as a result of Defendant's unlawful actions;

b.  Compensation for all litigation expenses, including reasonable attorneys' fees and costs, with interest accruing at the maximum legal rate until fully paid;

c.  An award of punitive damages in an amount sufficient to punish Defendant for their egregious misconduct and to deter similar conduct in the future;

d.  Such other and further relief as the Court deems just, proper, and equitable under the circumstances.

Respectfully Submitted,
Barry W. Gilmer

BY:    */s/ Matthew Wade Gilmer*
Matthew Wade Gilmer, MSB# 104685
Attorney for Barry W. Gilmer
300 Catlett Rd.
Madison, MS 39110

Phone: 228.215.000
E: matt@mwglawyer.com